UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RPM FREIGHT SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WESCO INSURANCE COMPANY,<br><br>Defendant. | Case No.:<br><br>Hon.<br><br>Magistrate Judge. |

# COMPLAINT AND JURY DEMAND

| | |
|---|---|
| WILSON GROUP LAW PLC<br>James D. Wilson<br>Two Towne Square, Suite 901<br>Southfield, Michigan 48076<br>(313) 983-1234<br>jwilson@wglplc.com<br><br>*Attorneys for Plaintiff RPM Freight Systems, LLC* | |

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, RPM Freight Systems, LLC ("RPM"), by and through its undersigned attorneys, and for its Complaint against Defendant, Wesco Insurance Company ("Wesco"), states as follows:

## NATURE OF ACTION

1. This is an action for the purpose of determining an actual controversy between the parties, construing rights and legal obligations arising from insurance policies, Wesco's breach of its Commercial General Liability ("CGL") insurance policy, confirming Wesco's duties and obligations under its Commercial Umbrella Policy upon exhaustion of Wesco's CGL insurance policy, the damages due to RPM as a result of Wesco's breach of its insurance policy, and violation of Michigan Compiled Law 500.2006.

## PARTIES

2. RPM is a Michigan corporation, with its principal place of business located at 301 West 4th St. Suite 200, Royal Oak, MI 48067.

3. Wesco is a Delaware corporation, with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

4. This is an action between citizens of different states: Plaintiff, RPM, at all times relevant, was and is a citizen of the State of Michigan; Defendant, Wesco, at all times relevant, was and is a citizen of Delaware.

5. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of a different state from Defendant, and because the value of the matter in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because: (1) Plaintiff's principal place of business is in this District; (2) Defendant does business in this District; (3) a substantial portion, if not all, of the events, acts and/or omissions on which this matter is based occurred in the Eastern District of Michigan; and (4) the insurance policies in question provide coverage for Plaintiff's facilities and operations in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

### The Accident and Loss

7. RPM is a freight broker that specializes in arranging freight and finished vehicle transportation.

8. As part of its business, RPM is an intermediary between clients and carriers to ensure secure transportation of various types of cargo.

9. This litigation arises out of an alleged motor vehicle accident that took place on March 22, 2019, in which Jackie Lynn Evans and Peggy Lynn Evans died ("the Accident"). The tractor-trailer involved in the Accident was transporting a load of motor vehicles that was brokered by RPM.

10. RPM appointed Paper Impex USA ("Paper Impex") to serve as the motor carrier for the subject motor vehicles. Paper Impex, without RPM's knowledge or consent, double brokered the load to Raptor Auto Shipping, Inc. ("Raptor") to serve as the motor carrier.

11. The tractor-trailer involved in the Accident, driven by Bunyod Kushnazarov, an employee of Raptor, was owned by Paper Impex and leased by Paper Impex to Raptor. As such, RPM did not own, lease, or operate the tractor-trailer involved in the Accident.

12. After the Accident, a wrongful death suit was filed in the Eastern District of Arkansas, identified as *Armis Advisers, LLC, et al. v. Bunyod Kushnazarov, et al.,* E.D. Ark., Case No. 2:19-cv-143-JM (the "Underlying Complaint").

13. The Underlying Complaint contains counts against RPM for Wrongful Death and Survival Action (Count I), Ordinary Negligence (Count II), Negligent Hiring (Count III), Negligent Training (Count IV), Negligent

4

Supervision (Count V), and Negligent Retention (Count VI). The complaint seeks general and punitive damages.

14. The Underlying Complaint alleges, "RPM controlled, managed, and supervised the manner, method, and procedure for how this load would be transported, including the date and time the load was to be picked up and delivered, the route to be taken, payment restrictions, and extensive driving instructions."

15. The Underlying Complaint further alleges, in relevant part, that:

> As a result of the relationship between RPM, Paper Impex, Raptor Auto Shipping, and Bunyod Kushnazarov, all alleged acts, negligence, and recklessness of Bunyod Kushnazarov set forth in this Complaint are imputed to Raptor Auto Shipping, Paper Impex, and to RPM under the doctrine of respondeat superior.
>
> Irrespective of the employment relationship, RPM is a broker of interstate motor carriers subject to FMCSA Regulation and is therefore responsible for the acts and omissions of Paper Impex, Raptor Auto Shipping, and Bunyod Kushnazarov.
>
> In the alternative, RPM acted as a broker of the load being hauled by the tractor-trailer being driven by Bunyod Kushnazarov and in that capacity selected, hired, and contracted with Paper Impex, Raptor Auto Shipping, and Bunyod Kushnazarov to haul the load.

16. As a result of the claims and allegations made against RPM in the Underlying Complaint, RPM is required to defend itself against the

5

Underlying Complaint, and may be subject to an award of damages against it at trial of the Underlying Complaint.

**Relevant Portions of Wesco's Policies**

    a. **Wesco's Commercial General Liability Policy**

17.    Defendant Wesco issued a Commercial General Liability ("CGL") insurance policy to RPM with effective dates from April 19, 2018, to April 19, 2019, identified as Policy Number WPP1454076 02 ("CGL Policy"). (**Exhibit A**, Declarations Page.)

18.    The CGL Policy has Limits of Insurance of $1,000,000 for Each Occurrence and $2,000,000 General Aggregate Limit for the Policy Period. (**Exhibit A**, Declarations Page.)

19.    Wesco agreed under the CGL Policy, in part, that:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. (**Exhibit A**, page 1 of 16.)

20.    The CGL Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death …" (**Exhibit A**, page 13 of 16.)

21. The CGL Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury' … to which this insurance applies are alleged." (**Exhibit A,** page 16 of 16.)

22. The CGL policy is modified by a Hired Auto and Non-Owned Auto Liability Endorsement, which provides, in relevant part, that:

**B. NON-OWNED AUTO LIABILITY**

The insurance provided under **Section I – Coverage A – Bodily Injury and Property Damage Liability** applies to "bodily injury" or "property damage" arising out of the use of a "non-owned auto" by any person other than you in the course of your business. (**Exhibit A**, Hired Auto and Non-Owned Auto Liability Endorsement.)

23. The CGL policy defines "Non-Owned Auto" as "any 'auto' you do not own, lease, hire, rent or borrow which is used in connection with your business." (**Exhibit A**, Hired Auto and Non-Owned Auto Liability Endorsement.

### b. Wesco's Commercial Umbrella Policy

24. Defendant Wesco also issued a Commercial Umbrella Policy to RPM with effective dates from April 19, 2018, to April 19, 2019, identified as Policy Number WUM1455029 02 ("Umbrella Policy"). (**Exhibit B,** Declarations Page.)

7

25. The Umbrella Policy has limits of insurance of $5,000,000 for each occurrence and a $5,000,000 Policy Aggregate Limit, subject to the Schedule of Underlying limits. (**Exhibit B**, Declarations Page.)

26. Wesco agreed under the Umbrella Policy, in part, that:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. (**Exhibit B**, Commercial Liability Umbrella Coverage Form, page 1 of 18.)

27. The Umbrella Policy defines "bodily injury" as "bodily injury, disability, sickness or disease sustained by a person, including death …" (**Exhibit B,** page 15 of 18.)

28. The Umbrella Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury'… to which this insurance applies are alleged." (**Exhibit B,** page 17 of 18.)

29. The Umbrella Policy defines "underlying insurance" as "any policies of insurance listed in the Declarations under the Schedule of 'underlying insurance.'" (**Exhibit B,** page 17 of 18.)

8

30. The Umbrella Policy defines "ultimate net loss" as "the total sum … that the insured becomes legally obligated to pay as damages by reason of settlement or judgments …" (**Exhibit B**, page 18 of 18.)

31. The Umbrella Policy defined "retained limit" as "the available limits of 'underlying insurance' scheduled in the Declarations or the 'self-insured retention'". (**Exhibit B,** page 17 of 18.)

32. The CGL Policy and the Commercial Auto Liability insurance issued by Wesco are identified as "Underlying Insurance" to the Umbrella Policy. (**Exhibit B**, Schedule of Underlying.)

33. The Umbrella Policy follows form to the CGL Policy, including the Hired Auto and Non-Owned Liability Endorsement, as stated in the Umbrella Policy's Following Form Endorsement. (**Exhibit B,** Following Form Endorsement.)

34. The Following Form Endorsement provides that: "The insurance provided under this policy will follow the same provisions, exclusions and limitations that are contained in the applicable 'underlying insurance', unless otherwise directed by this policy." (**Exhibit B**, Following Form Endorsement.)

**Wesco's Wrongful Denial of Coverage for the Accident**

35. The Accident was timely reported on behalf of RPM to Wesco.

36. In light of the circumstances of the Accident and the claims and allegations of the Underlying Complaint, pursuant to the terms and conditions of the CGL Policy, Wesco is obligated to defend and indemnify RPM with regard to the Accident and the Underlying Complaint.

37. Rather than comply with its duties and obligations under the CGL Policy, on February 17, 2021, Wesco wrongfully denied coverage for the Accident and the Underlying Complaint, and has refused to recant its denial of coverage.

38. Wesco similarly wrongfully denied coverage under the Umbrella Policy on February 17, 2021.

39. Wesco breached the CGL Policy through its wrongful denial of coverage, and has similarly stated its intention to breach the Umbrella Policy if it is implicated.

40. RPM is entitled to coverage under the CGL Policy for the Accident and Underlying Complaint, as well as the Umbrella Policy upon exhaustion of the CGL Policy.

## **FIRST CAUSE OF ACTION**

(Breach of Contract)

41. RPM repeats and realleges the allegations set forth in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. The Wesco CGL Policy constitutes a valid and enforceable contract between RPM and Wesco.

43. RPM paid all premiums, provided prompt notice of the Accident and the Underlying Complaint, and otherwise performed all obligations required of it under the CGL Policy.

44. Under the terms of the CGL Policy, Wesco must reimburse RPM for all defense costs and damages, up to the limits of insurance of the CGL Policy, incurred by RPM for the Accident and the Underlying Complaint. (**Exhibit A**, page 1 of 16.)

45. As detailed above, suit was brought against RPM in the Eastern District of Arkansas in the case of *Armis Advisers, LLC, et al. v. Bunyod Kushnazarov, et al.,* E.D. Ark., Case No. 2:19-cv-143-JM.

46. As detailed above, the Accident and the claims and allegations brought against RPM in the Underlying Complaint are within the coverage grant of the CGL Policy, and trigger Wesco's duty to defend and indemnify RPM.

47. As detailed above, RPM did not breach any condition of the CGL Policy.

48. As detailed above, neither the Accident nor the damages are excluded from coverage under the CGL Policy.

49. Wesco has not reimbursed any amounts to or on behalf of RPM in connection with the Accident and the Underlying Complaint.

50. Wesco wrongfully denied coverage for the Accident on February 17, 2021, and refused to recant its denial of coverage, thereby breaching the terms and conditions of the CGL Policy.

51. As a direct and proximate result of Wesco's breach of the CGL Policy, RPM has incurred defenses costs, and may be subject to damages up to the amount of the Policy's $1,000,000 Limit of Insurance.

52. RPM is entitled to reimbursement from Wesco as a consequence of Wesco's breach of the CGL Policy for all defense costs and damages RPM incurs with regard to the Underlying Complaint, plus consequential damages, attorneys' fees, costs, expenses, penalty interest under MCL 500.2006, and pre- and post-judgment interest.

## **SECOND CAUSE OF ACTION**

(Declaratory Judgment Regarding CGL Policy)

53. RPM repeats and realleges the allegations set forth in paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. Under the terms of the Wesco CGL Policy, Wesco must reimburse RPM for the defense costs it incurs relating to the Underlying Complaint, as well as damages arising by way of settlement or verdict for the

Accident and Underlying Complaint, up to the limits of insurance of the CGL Policy. (**Exhibit A**, page 1.)

55. As detailed above, a suit was filed against RPM in the Eastern District of Arkansas identified as *Armis Advisers, LLC, et al. v. Bunyod Kushnazarov, et al.,* E.D. Ark., Case No. 2:19-cv-143-JM.

56. As detailed above, the Accident and the claims and allegations of the underlying Complaint are within the coverage grant of the CGL Policy.

57. As detailed above, RPM complied with and did not breach any condition of the CGL Policy.

58. As detailed above, neither the Accident nor the Underlying Complaint is excluded from coverage by the CGL Policy.

59. Wesco wrongfully denied that it owes any obligations to RPM for the Accident or for the claims and allegations of the Underlying Complaint, including any duty to defend or indemnify RPM.

60. A judicial determination of the CGL Policy's scope and coverage is therefore appropriate and necessary pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

61. An actionable and justiciable controversy exists between RPM and Wesco concerning the proper construction of the CGL Policy, and the

rights and obligations of the parties thereto, with respect to the Accident and the claims and allegations brought against RPM in the Underlying Complaint.

62. RPM is entitled to a declaration that the CGL Policy provides coverage to it for the Accident and the Underlying Complaint, including Wesco's duty to defend and indemnify RPM, and any other relief this Court deems proper.

## THIRD CAUSE OF ACTION

(Declaratory Judgment Regarding the Umbrella Policy)

63. RPM repeats and realleges the allegations set forth in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. Under the terms and conditions of the Wesco Umbrella Policy, Wesco is obligated to provide coverage for the Accident and the claims and allegations of the Underlying Complaint upon exhaustion of the CGL Policy on a follow form basis to the terms and conditions of the CGL Policy. (**Exhibit B**, Following Form Endorsement.)

65. As detailed above, the Accident and the claims and allegations of the Underlying Complaint are within the coverage grant of the Umbrella Policy.

66. RPM paid all premiums, caused prompt notice of the Accident to be provided, and otherwise performed all obligations required of it under the Umbrella Policy,

67. As detailed above, RPM complied with and did not breach any condition of the Umbrella Policy.

68. As detailed above, the Accident, as well as the claims and allegations of the Underlying Complaint, are covered, and not excluded, by the Umbrella Policy.

69. On February 17, 2021, Wesco wrongfully denied coverage under the Umbrella Policy for the Accident and Underlying Complaint.

70. A judicial determination of the scope and applicability of the Umbrella Policy to the Accident and Underlying Complaint is therefore appropriate and necessary pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 for the sake of judicial economy and efficiency, and to bind Wesco to the Court's findings with regard to coverage for the Accident and Underlying Complaint under the CGL Policy, including the duty to defend and indemnify RPM.

71. An actionable and justiciable controversy exists between RPM and Wesco concerning the proper construction of Wesco's Umbrella Policy,

and the rights and obligations of Wesco thereto with respect to the Accident and the Underlying Complaint.

72. RPM is entitled to a declaration finding that there is coverage available to it for the Accident and Underlying Complaint under the Umbrella Policy upon exhaustion of the CGL Policy, and any other relief this Court deems proper.

## **FOURTH CAUSE OF ACTION**

(Penalty Interest Pursuant to MCL 500.2006)

73. RPM repeats and realleges the allegations set forth in paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74. Wesco is required to act in good faith with respect to its contractual duties and obligations under the CGL Policy.

75. Wesco intentionally disregarded the interests of RPM for the Accident and the Underlying Complaint, and has wrongfully maintained its baseless policy defenses in order to protect its own financial interest at the expense of RPM.

76. Pursuant to the Uniform Trade Practices Act, specifically MCL 500.2006(1):

> A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided

under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis.

77. Pursuant to MCL 500.2006(4), if benefits are not paid on a timely basis, an insurer shall be liable for simple interest at a rate of 12% per annum on the unpaid amount from a date sixty (60) days after satisfactory proof of loss was received by the insurer.

78. RPM has provided satisfactory proof of the Accident and the claims and allegations of the Underlying Complaint.

79. Wesco has not paid any portion of the defense costs incurred by RPM with regard to the Underlying Complaint and has denied it is obligated to pay any portion of a settlement on behalf of or verdict issued against RPM.

80. Wesco's refusal to pay defense costs incurred by RPM or indemnify RPM for damages associated with the Underlying Complaint was undertaken in violation of the Uniform Trade Practices Act, and Wesco is obligated to pay penalty interest to RPM at the rate of 12% per annum on all amounts it is determined to owe RPM, pursuant to MCL 500.2006.

**PRAYER FOR RELIEF**

WHEREFORE, RPM prays for relief as follows:

(a) On the First Cause of Action, RPM requests that the Court enter judgment against Wesco for its breach of the CGL Policy and award to RPM all amounts to which it is determined to be entitled pursuant to the terms and conditions of Wesco's CGL Policy, plus consequential damages, attorneys' fees, costs, expenses, penalty interest, and pre- and post-judgment interest to the extent permitted by law;

(b) On the Second Cause of Action, RPM requests that this Court enter a declaratory judgment in favor of RPM against Wesco, declaring that Wesco's CGL Policy provides coverage for the Accident and the claims and allegations of the Underlying Complaint and that it is obligated, pursuant to the terms and conditions of the CGL Policy, to reimburse RPM for all defense costs incurred and damages associated with the Accident and the Underlying Complaint;

(c) On the Third Cause of Action, RPM requests that this Court enter a declaratory judgment in favor of RPM and against Wesco declaring that Wesco's Umbrella Policy provides coverage for the Accident and the claims and allegations of the Underlying Complaint, upon exhaustion of the Limits of Insurance of Wesco's CGL Policy, up to the full $5,000,000 Limits of Insurance of the Umbrella Policy;

(d)     On the Fourth Cause of Action, RPM requests that this Court award to RPM 12% penalty interest on all amounts to which it is entitled from Wesco, pursuant to MCL 500.2006; and

(e)     Additionally, RPM requests such other and further relief against Wesco as the Court deems just and proper.

## JURY DEMAND

Plaintiff, RPM Freight Systems, LLC, hereby demands trial by jury on all issues so triable.

                                            Respectfully submitted,

Dated:  August 13, 2021         WILSON GROUP LAW PLC

                                            /s/ James D. Wilson
                                            James D. Wilson
                                            Two Towne Square, Suite 901
                                            Southfield, Michigan 48076
                                            (313) 983-1234
                                            jwilson@wglplc.com

                                            *Attorneys for Plaintiff RPM Freight Systems, LLC*