UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RPM FREIGHT SYSTEMS, LLC,

       Plaintiff,

and

BEAZLEY FURLONG LTD.,

       Intervenor-Plaintiff,

v.                                    Case No. 21-11882
                                        Honorable Linda V. Parker

WESCO INSURANCE COMPANY,

       Defendant.

_____/

## OPINION AND ORDER: (1) DENYING WESCO'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 21); (2) GRANTING IN PART AND DENYING IN PART BEAZLEY'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 22); AND (3) GRANTING RPM'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 23)

This is a diversity action arising out of a breach of contract dispute.  On

August 13, 2021, Plaintiff RPM Freight Systems, LLC ("RPM") filed this lawsuit

alleging that Defendant Wesco Insurance Company ("Wesco") breached its duty

under Wesco's Commercial General Liability Policy ("CGL Policy") and Wesco's

Commercial Umbrella Policy ("Umbrella Policy") by denying coverage in

violation of Michigan Compiled Laws § 500.2006.  (ECF No. 1.)  In its Complaint,

RPM alleges the following "claims": (1) Breach of Contract; (2) Declaratory

Judgment Regarding the CGL Policy; (3) Declaratory Relief Regarding the Umbrella Policy; and (4) Penalty Interest Pursuant to MCL 500.2006.

On January 1, 2022, Intervenor-Plaintiff Beazley Furlong Ltd. ("Beazley") filed a motion to intervene (ECF No. 12), which the Court granted on April 13, 2022.  (ECF No. 14.)  On April 14, 2022, Beazley filed a "Complaint in Intervention" alleging that because Wesco allegedly breached its duties, Beazley was forced to defend RPM in an underlying lawsuit and indemnify RPM for a settlement of the lawsuit. (ECF No. 15.)  In its Complaint, Beazley alleges the following claims: (1) Contractual Subrogation; (2) Equitable Subrogation; and (3) Equitable Contribution.

The matters are presently before the Court on Wesco's Motion for Summary Judgment (ECF No. 21), Beazley's Motion for Summary Judgment (ECF No. 22), and RPM's Motion for Summary Judgment (ECF No. 23).  The motions are fully briefed.  (ECF Nos. 24, 25, 26, 27.)  Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is denying Wesco's motion, granting in part and denying in part Beazley's motion, and granting RPM's motion.

## STATEMENT OF FACTS

### A. The Accident and Loss

RPM is a freight broker specializing in arranging freight and vehicle transportation.  RPM acts as intermediary between clients and carriers to transport various types of cargo.  RPM appointed Paper Impex USA ("Paper Impex") to serve as the motor vehicle carrier for the transportation of Tesla cars ("the load").  Allegedly without RPM's knowledge, Paper Impex brokered the load to Raptor Auto Shipping, Inc. ("Raptor") to serve in its place as motor carrier for the load.

On or around March 22, 2019, a tractor-trailer carrying the load, owned by Paper Impex and leased to Raptor, was involved in an accident that resulted in the death of two victims.  Following the accident, a wrongful death lawsuit[1] was filed against RPM, Paper Impex, Raptor, and Bunyod Kushnazarov ("the driver") in the Eastern District of Arkansas (the "Underlying Action").  Specifically, the plaintiffs in the Underlying Action alleged that "RPM controlled, managed, and supervised the manner, method, and procedure for how this load would be transported, including the date and time the load was to be picked up and delivered, the route to

---

[1] The Underlying Action is entitled *Armis Advisers, LLC, et al. v. Bunyod Kushnazarov, et al.,* E.D. Ark., Case No. 2:19-cv-143-JM.  The complaint alleges the following counts: Wrongful Death and Survival Action (Count I), Ordinary Negligence (Count II), Negligent Hiring (Count III), Negligent Training (Count IV), Negligent Supervision (Count V), and Negligent Retention (Count VI).  (*See* ECF No. 1 at Pg ID 4-5.)

3

be taken, payment restrictions, and extensive driving instructions." (ECF No. 21-4 at Pg ID 605, ¶ 29.)  Further, the plaintiff asserted that "all alleged acts, omissions, negligence, and recklessness of [the driver] . . . are imputed to . . . RPM under the doctrine of *respondeat superior*." (*Id.* ¶ 32.)  RPM ultimately settled the Underlying Action for $1,445,000, which Beazley paid $1,413,630.33, and RPM paid $31,369.67.

## B.  Relevant Portions of Wesco's Policies

### 1.  Wesco's CGL Policy

Wesco issued the CGL Policy to RPM with effective dates of April 19, 2018, to April 19, 2019. Under the CGL Policy, insurance coverage is limited to $1,000,000 for each occurrence and a $2,000,000 general aggregate limit for the policy period.  In relevant part, the CGL Policy provided the following: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."  (ECF No. 1 ¶ 19, Pg ID 6.)  The CGL Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death . . . ." (*Id.* ¶ 20.)  The policy defines "suit" as "civil proceeding in which damages because of 'bodily injury' . . . to which the insurance applies are alleged." (*Id.* ¶ 20, Pg ID 7.)

4

The CGL policy also includes an addendum, known as a Hired Auto and

Non-Owned Auto Liability Endorsement (the "HNOA" endorsement), which

provides in part:

> **A. HIRED AUTO LIABILITY**
>
> The insurance provided under **Section I - Coverage A – Bodily Injury And Property Damage Liability** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.
>
> **B. NON-OWNED AUTO LIABILITY**
>
> The insurance provided under **Section I - Coverage A – Bodily Injury And Property Damage Liability** applies to "bodily injury" or "property damage" arising out of the use of a "non-owned auto" by any person other than you in the course of your business.

(ECF No. 21-9 at Pg ID 819.)  Under the CGL Policy, "Non-Owned Auto" is

defined as "any 'auto' you do not own, lease, hire, rent or borrow which is used in

connection with your business."  (*Id.* ¶ 23.)

### 2.  Wesco's Umbrella Policy

In addition to the CGL Policy, Wesco issued the Umbrella Policy to RPM

with effective dates of April 19, 2018, to April 19, 2019.  Under the Umbrella

Policy, insurance coverage is limited to $5,000,000 for each occurrence and a

$5,000,000 policy aggregate limit.  In relevant part, the CGL Policy provides the

following:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.

(ECF No. 1 ¶ 22, Pg ID 8.)

The Umbrella Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death . . ." (*Id.* ¶ 27.)  The policy defines "suit" as "civil proceeding in which damages because of 'bodily injury' . . . to which the insurance applies are alleged." (*Id.* ¶ 28.)  Further, the Umbrella Policy defines "underlying insurance" as "any policies of insurance listed in the Declarations under the Schedule of 'underlying insurance.'" (*Id.* ¶ 29.)  The term "ultimate net loss" is defined as "the total sum … that the insured becomes legally obligated to pay as damages by reason of settlement or judgments …" (*Id.* ¶ 30, Pg ID 9.)  Finally, "retained limit" is defined as "the available limits of 'underlying insurance' scheduled in the Declarations or the 'self-insured retention.'" (*Id.* ¶ 31.)

The Umbrella Policy also contains the "Non-Owned Auto Liability" addendum and provides that "[t]he insurance provided under this policy will follow the same provisions, exclusions and limitations that are contained in the applicable 'underlying insurance' [CGL Policy], unless otherwise directed by this policy." (*Id.* ¶ 33–34.)

6

### C. Relevant Portions of Beazley's Logistics Liability Policy

Beazley issued a Logistics Liability Insurance Policy (the "Beazley Policy") to RPM with effective dates of April 19, 2018, to April 18, 2019.  The Beazley Policy provides coverage to RPM's freight brokerage business and includes third-party liability coverage for any property damage or bodily injury that occurs.  The Beazley Policy, in relevant part, provides the following:

> **1.3 Third Party Liability, Contingent Auto / Freight Broker Liability**
>
> **a) Third Party Liability (this coverage applies to all Insured Services excluding Freight Brokers and Domestic Freight Forwarders)**
> **Covers:**
>
> > I. Physical loss of or damage to property belonging to a third party
> > II. death and/or bodily injury to any third party
>
> **b) Contingent Auto/Freight Broker Liability (this coverage applies to Freight Brokers and Domestic Freight Forwarders)**
>
> Insures your liability and expenses arising from an automobile accident involving a Motor Carrier. Covers:
>
> > I. Physical loss of or damage to property belonging to a third party
> > II. death and/or bodily injury to any third party

(ECF No. 21-12 at Pg ID 1027.)

### D. Wesco's Denial of Coverage & RPM's Tender of Defense and Indemnity

RPM reported the accident to Wesco.  On February 17, 2021, Wesco denied coverage under the CGL Policy for the accident and the Underlying Action. On the same day, Wesco also denied coverage under the Umbrella Policy.  RPM then tendered its legal defense and indemnity in the Underlying Action to Beazley and Wesco under each company's respective policies.  In response, Beazley accepted RPM's tender and requested Wesco's participation in the defense.  However, Wesco "declined Beazley's request to participate in RPM's defense."  (ECF No. 16 ¶ 29, Pg ID 195.)  Further, on November 4, 2021, Wesco's counsel forwarded a letter declining to indemnify RPM in the settlement. (ECF No 23-5.)

In response to Wesco's denial of coverage, RPM filed the current action alleging that Wesco breached its duties under the CGL and Umbrella Policies to defend and indemnify RPM in the Underlying Action.  After intervening, Beazley filed its complaint alleging that because of Wesco's denial of coverage, it was forced to pay over $500,000.00 in defense costs for the Underlying Action and the remainder of the Beazley policy limits to settle the Underlying Action.

### LEGAL STANDARD

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry when

evaluating a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255.

Although not explicitly addressed in their pleadings or briefs, parties appear to agree that Michigan law controls.  Under Michigan law, construing and interpreting insurance contracts involve "question[s] of law for a court to

determine." *Orchard, Hiltz & McCliment, Inc. v. Phx. Ins. Co.*, 146 F. Supp. 3d 879, 885 (E.D. Mich. 2015) (citing *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190 (Mich. 1999); *see also Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 799 (6th Cir. 1996) (where the facts are undisputed, the court is presented solely with a question of law concerning the construction of an insurance policy). "When analyzing the scope of insurance policy coverage, the traditional principles of contract and insurance law apply." *Orchard*, 146 F. Supp. 3d at 885. Michigan courts resolve disputed insurance policies in accordance with their terms and do so by resolving ambiguous policies in the insured's favor. *See Hamilton Specialty Ins. Co. v. Transition Inv., LLC*, 818 F. App'x 429, 432 (6th Cir. 2020). "Contractual language limiting coverage must be unambiguous.  Otherwise the clause is unenforceable." *Id.*

While the insured bears the burden to demonstrate that a claim falls within the terms of the policy, *see Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 671 (6th Cir. 2012) (citing *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 510 (Mich. 1995)), it is the insurer's burden to prove that the claim in question falls outside of its policy, *see Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 553 (6th Cir. 2003) ("The insurer has the burden of showing that a specific tendered claim is not covered under its policy.").

10

## ANALYSIS

Wesco, Beazley, and RPM filed cross-motions for summary judgment based on overlapping arguments and analysis.  (ECF Nos. 22, 23, 24.)  The Court will address each motion for summary judgment in the order of filing.

### I.  Wesco's Motion for Summary Judgment

### A. CGL Insurance Policy Coverage

In its motion for summary judgment, Wesco seeks summary judgment on a determination that (1) coverage for RPM was unavailable under the HNOA endorsement because the truck involved in the accident was not used in connection with RPM's business and did not occur in the course of RPM's business, and (2) the Beazley Policy is primary to the CGL Policy because it provides more specific coverage.  (ECF No. 21 at Pg ID 227.)  Wesco maintains that it did not breach the CGL Policy or Umbrella Policy when it declined to defend or indemnify RPM in the Underlying Action.  Specifically, Wesco argues that the Non-Owned Auto Liability provision—which provides coverage under the CGL Policy for "'bodily injury'" or 'property damage' arising out of the use of a 'non-owned auto' by any person other than [RPM]"—does not apply in this case because "the semi-truck involved in the accident was not 'used in connection with' RPM's business and the accident did not occur 'in the course of' RPM's business."  (ECF No. 21 at Pg ID 229.)

First, neither party disputes that the tractor-trailer involved in the accident does not fall under the Hired Auto Liability provision, because it requires that the injury or property damage "aris[e] out of the maintenance or use of a 'hired auto' by [RPM] or [RPM's] 'employees.'"  (ECF No. 21-9 at Pg ID 819.)  According to the testimony of RPM's Chief Operating Officer, John Perkovich, in the Underlying Action,[2] RPM does not hire drivers (employees) but hires carriers and arranges for shipments.  (*See* ECF No. 21-3 at Pg ID 362, 400-01.)  Because a primary tenet of the Hired Auto Liability provision is that it provides protection to the insured when a vehicle is driven by an employee, and because RPM admitted that it does not hire the drivers, there is no question as to whether the Hired Auto Liability provision applies in this case: it does not.  Thus, the remaining question is whether the Non-Owned Auto Liability provision applies based on a determination of whether the tractor-trailer involved in the accident was "used in connection with" RPM's business.

---

[2] This district has held that "deposition testimony from another action may be considered at the summary judgment stage." *Lyngaas v. Curaden AG*, No. 17-CV-10910, 2019 WL 2231217, at *10 (E.D. Mich. May 23, 2019) (citing *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) ("Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding.  Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c) and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence.")

### 1.  Interpretation of "in connection with"

Based on two cases outside of this Circuit, Wesco maintains that the phrase "in connection with" should be interpreted narrowly to not cover losses arising from work of independent contractors.  *See generally Union Standard Ins. Co. v. Hobbs Rental Corp.*, 566 F.3d 950 (10th Cir. 2009); *see also Teamone Contract Services, LLC v. Zurich Am. Ins. Co.*, No. 1:19-CV-3891-TWT, 2022 WL 1570011 (N.D. Ga. May 18, 2022).  These out-of-circuit, district court holdings are potentially persuasive, but not binding in this jurisdiction.  Conversely, RPM and Beazley maintain that the phrase "in connection with" should be interpreted to mean "related to," as it is unambiguous on its face. The Court agrees with RPM and Beazley.

Michigan courts have yet to address the issue of whether a "non-owned" vehicle driven by a non-employee is considered to be used "in connection with" a company's business for insurance purposes.  Under Michigan law, when "determining whether a policy applies, [courts] first must determine whether the policy is clear and unambiguous on its face."  *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 397 (Mich. 1991) (citation omitted).  "A fundamental tenet of [Michigan] jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*."  *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005) (emphasis in original); *see also Upjohn Co.* 476

N.W.2d at 397 (noting that courts "cannot create an ambiguity where none exists" and courts should "reject the temptation to rewrite the plain and unambiguous meaning of [an insurance policy] under the guise of interpretation."). Determining whether language in an agreement is ambiguous is "one of law; therefore, it may be resolved summarily." *Parrett v. American Ship Bldg. Co.,* 990 F.2d 854, 858 (6th Cir.1993).

Here, the phrase 'in connection with' is unambiguous. The Oxford English Dictionary, which is considered to be "one of the most authoritative on the English language," *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012), defines the word "connection" as: "The condition of being *related to* something else by a bond of interdependence, causality, logical sequence, coherence, or the like; relation between things one of which is bound up with, or involved in, another." 3 *Oxford English Dictionary* 746 (2d. ed. 1989); *see also Morse/Diesel, Inc. v. Provident Life & Acc. Ins. Co.*, 166 F.3d 1214 (6th Cir. 1998) (concluding that the "district court correctly held that the phrase *in connection with* . . . plainly refers to matters *related to* . . . .") (emphasis added). Based on the definition and its plain meaning, the Court is satisfied that the phrase 'in connection with' means 'related to,' and declines to engage in an attempt to interpret language that is unambiguous on its face. *See Rory*, 703 N.W.2d at 30.

*2. Whether the accident occurred "in connection with" RPM's business*

In the Complaint, RPM alleges that it is "a freight broker that specializes in arranging freight and finished vehicle transportation" and "as a part of its business, RPM is an intermediary between clients and carriers to ensure secure transportation of various types of cargo." (ECF No. 1 ¶¶ 7-8, Pg ID 3.)  In the Underlying Action, John Perkovich, RPM's agent, testified under oath that RPM is "in the business of arranging for the shipment of vehicles or freight . . ." and that it "get[s] paid by [its] customer to move their shipments with carriers."  (ECF No. 21-3 at Pg ID 329, 331.)  The accident at issue in the Underlying Action occurred while transporting Tesla vehicles that were brokered by RPM.  Specifically, an employee of Raptor, while driving a tractor-trailer owned by Paper Impex, got into an accident while transporting Tesla vehicles that RPM was hired to ship—a job that RPM contracted to Paper Impex. There can be no dispute that the accident in question occurred "in connection with" RPM's business of arranging vehicle transportation.  In fact, this transportation of Tesla vehicles was the very reason the Raptor employee was operating the tractor-trailer to begin with.  As such, the Court finds the accident occurred in connection with RPM's business.

## B. Whether the CGL Policy is in Excess of the Beazley Policy

Wesco argues, in the alternative, that if the Court finds that the CGL Policy provides coverage to RPM, it should find that the CGL Policy is in excess to the

Beazley Policy, because (1) the CGL Policy and the Beazley Policy do not cover the same loss, risks, or subject matter, and (2) the Beazley Policy provides more specific coverage.  Under Michigan law, when a court finds it difficult to designate a primary insurer, the inquiry turns to "whether the terms of the policies at issue cover the same loss, the same risk, and the same subject matter." *Frankenmuth Mut. Ins. Co. v. Cont'l Ins. Co.*, 537 N.W.2d 879, 882 (Mich. 1995).  If the court concludes that "there is exactly concurring coverage, it might be appropriate to prorate the costs of defense."  *Id.*

Regarding whether both policies cover the same loss, risks and subject matter, the Court finds that there is significant overlap.  Both policies provide coverage for third-party liability of any bodily injury sustained during a vehicle accident, with a vehicle being operated by someone other than RPM or its employees.  (*See* CGL Policy, ECF No. 21-9 at Pg ID 819; *see also* Section 1.3 of the Beazley Policy, ECF No. 21-12 at Pg ID. 1027.)  Moreover, both policies cover the same subject matter because they provide liability coverage for such damages arising out of RPM's business. (*Id.*)

Next, Wesco maintains that because the Beazley Policy provides more specific coverage, the Court should find that Wesco's insurance is excess.  In support of this argument, Wesco urges the Court to apply a "specific versus general" approach.  *See Liberty Mut. Ins. Co. v. Home Ins. Co.*, 583 F. Supp. 849,

852 (W.D. Pa. 1984) (noting that under this approach, "if there are specific and general policies covering the [same] damaged property . . . [t]he specific policy must first pay in full, and if it is not sufficient to cover the loss, the general policy pays the difference up to the amount of the policy.") (internal citations omitted). While acknowledging that it has yet to find any cases where Michigan courts applied such a test, Wesco asserts that the courts have "signaled" to its application. (ECF No. 21 at Pg ID 246; ECF No. 26 at Pg ID 2393-94.)  Specifically, Wesco cites to *Frankenmuth* where the court noted that "where there is a policy more specifically tailored to the circumstances of the claim, it would be appropriate to designate that policy as the primary insurer . . . ."  537 N.W.2d 879 at 882.

The Court does not agree that the Beazley Policy is "more specifically tailored to the circumstances of the claim" but finds that the Beazley Policy is merely drafted in a more concise manner.  The Beazley Policy contains a section that is labeled "Contingent Auto/Freight Broker Liability (this coverage applies to Freight Brokers and Domestic Freight Forwarders)" and states that it applies to "death and/or bodily injury to any third party."  (ECF No. 21-12 at Pg ID 1027.)  Similarly, the CGL Policy states that it "applies to 'bodily injury' or 'property damage' arising out of the use of a 'non-owned auto' by *any person other than you* in the course of your business." (ECF No. 21-9 at Pg ID 819 (emphasis added).)  As discussed above, the CGL Policy clearly refers to third parties and this is an

example of a difference in drafting rather than demonstrating that the Beazley policy is more specific to the circumstances of the claim. *See Frankenmuth Mut. Ins. Co.*, 537 N.W.2d at 882.

For the above reasons, Wesco is not entitled to summary judgement as to a finding that coverage for RPM was unavailable under the HNOA endorsement because the truck involved in the accident was not used in connection with RPM's business and did not occur in the course of RPM's business, and a finding that the Beazley Policy is primary to the CGL Policy because it provides more specific coverage. As such, Wesco's summary judgment motion is denied.

## II.   Beazley's Summary Judgment Motion

In its motion for summary judgment, Beazley maintains the following:

(1)  Wesco breached its duty to defend RPM in the Underlying Action by refusing to accept RPM's tender of defense and rejecting Beazley's request that Wesco participate in the defense;

(2)  "Beazley, having made defense and indemnity payments for RPM in the Underlying Action without any contribution from Wesco, has a right of equitable subrogation to recover those amounts from Wesco;"

(3)  "Beazley is not only equitably subrogated to RPM's right to recover from Wesco, it is also contractually subrogated to that right, entitling Beazley to reimbursement from Wesco for amounts it incurred with no contribution from Wesco;" and

(4)  "In the alternative, should the Court find that Wesco is not liable for all costs of defense and settlement of

18

the Underlying Action by virtue of Michigan law and Beazley's Subrogation claims, Beazley is entitled to recover at least Wesco's pro rata share of the costs incurred and payments made by Beazley for RPM's defense and indemnification under Beazley's claim for equitable contribution.

(ECF No. 22 at Pg ID 1094, 1096, 1099 1101.)

### A. Wesco's duty to defend under Michigan law

In its motion, Beazley maintains that Wesco breached its duty to defend RPM in the Underlying Action by refusing to accept RPM's tender of defense and rejecting Beazley's request to jointly participate in the defense of RPM. The Court agrees. Michigan law is clear as to the duty of insurance companies to defend insurers in the face of a lawsuit. *See Hamilton Specialty Ins. Co.*, 818 F. App'x at 432. "Michigan law recognizes an insurer's duty to defend the insured from suit," and "[i]f coverage is *at all arguable*, then an insurer must defend the insured. *Id* (citing *Polkow v. Citizens Ins. Co. of Am.*, 476 N.W.2d 382, 383 (Mich. 1991) (emphasis added)); *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). "Stated otherwise, insurers escape their duty to defend only if the policy rules out any colorable interpretation permitting coverage." *Id.*; *N. Bank v. Cincinnati Ins. Co.*, 125 F.3d 983, 986 (6th Cir. 1997). Moreover, the duty to defend is not limited to language contained in the complaint. *Id.* (citing *Pattison v. Employers Reinsurance Corp.*, 900 F.2d 986, 988 (6th Cir.1990)). "Rather, the insurer must look beyond the allegations to determine whether

19

coverage is possible. The duty to defend extends to allegations which are groundless, false or fraudulent." *Id.* (citations omitted)).

Further, "[w]hen an insurer allegedly breaches its duty to defend, Michigan law requires resolving any doubt over the policy's coverage in the insured's favor." *Hamilton Specialty Ins. Co.*, 818 F. App'x at 432. Once a duty is determined to be breached, "an insurer becomes liable 'for the costs of defense as well as any reasonable, good faith settlement paid by the insured." *Id.* (quoting *N. Bank*, 125 F.3d at 986).

Here, there is no question that Wesco had a duty to defend RPM in the Underlying Action. The Underlying Action implicates RPM, alleging that the driver of the tractor trailer was employed by Raptor and Paper Impex, and received direction from the companies to transport the Tesla vehicles under a broker agreement between Raptor, Paper Impex, and RPM. (ECF No. 21-4 at Pg ID 601.) Further, the complaint in the Underlying Action alleges that because of the relationship, the driver's alleged acts "are imputed to [Raptor], [Paper Impex], and RPM, under the doctrine of *respondeat superior*." (*Id.*) Further, pursuant to the CGL Policy's "Non-Owned Auto Liability" provision, "[t]he insurance…applies to 'bodily injury'…arising out of the use of 'non-owned auto' by any person other than you in the course of [RPM's] business." (ECF No. 21-9 at Pg ID 819.) "Non-Owned Auto" is defined as "any 'auto' you do not own, lease, hire, rent or borrow

which is used in connection with [RPM's] business." (*Id.* ¶ 23.)  Again, "[i]f

coverage is *at all arguable*, then an insurer must defend the insured."  *See*

*Hamilton Specialty Ins. Co.*, 818 F. App'x at 432.  Here, the allegations of 'bodily

injury' in the Underlying Action arose from the use of a "non-owned auto" in

connection with RPM's business. As such, the coverage and the Underlying Action

clearly demonstrate that Wesco, as stated in its own CGL Policy and as Michigan

law requires, had "the right and duty to defend the insured against any 'suit'

seeking those damages."  (ECF No. 21-9 at Pg ID 749.)

Thus, Beazley is entitled to summary judgment on the issue of whether

Wesco owed a duty to defend RPM in the Underlying Action.

### B. Equitable Subrogation

Next, Beazley maintains that because it defended and indemnified RPM in

the Underlying Action without any contribution from Wesco, Beazley has a right

of equitable subrogation to recover the amount.  The doctrine of equitable

subrogation "permits a party who satisfies another's obligation to recover from the

party 'primarily liable' for the extinguished obligation."  *In re Air Crash Disaster*,

86 F.3d 498, 549 (6th Cir. 1996).  "Under Michigan law, the right of an insurer

who pays the total amount of a loss to seek contribution from a co-insurer who also

is on the risk is based on the theory of subrogation."  *Hudson v. State Farm Fire &*

*Cas. Co.*, 93 F. Supp. 3d 773, 776 (E.D. Mich. 2015) (quoting *Cent. Mich. Bd. of*

*Trs. v. Employers Reinsurance Corp.*, 117 F. Supp. 2d 627, 638 (E.D. Mich. 2000)).  To apply equitable subrogation, (1) the party who pays another's debt cannot be considered "a mere volunteer," and (2) the party with the *primary obligation* to pay the debt may not use the doctrine to recover from the other parties involved.  *See In re Air Crash Disaster*, 86 F.3d at 549-50 (emphasis added); *see also Auto Club Ins. Ass'n v. New York Life Ins. Co.*, 485 N.W.2d 695, 698 (Mich. 1992); *Michigan Hosp. Serv. v. Sharpe*, 63 N.W.2d 638, 641 (Mich. 1954).

Here, it is clear that Beazley was not a "mere volunteer" as it was obligated to defend and indemnify RPM under its insurance contract.  *See Auto-Owners Ins. Co. v. Amoco Prod. Co.*, 658 N.W.2d 460, 464 (Mich. 2003) (concluding that "when an insurance carrier pays the expenses of its own insured pursuant to an insurance contract, it is not acting as a volunteer.").  However, a genuine issue of material fact still exists as to whether Wesco or Beazley owed the primary duty to defend RPM in the Underlying Action.  As such, the Court may not apply the doctrine of equitable subrogation in this case.

### C. Contractual "Conventional" Subrogation

Next, Beazley maintains that it has a right of contractual subrogation to seek reimbursement from Wesco for its defense and indemnity of RPM in the Underlying Action.  "'Subrogation' denotes two different kinds of rights, those that

are transferred in effect by way of contractual assignment and those that arise by

operation of law from the relations of various involved parties under equitable

principles." *Citizens Ins. Co. of Am. v. Buck*, 548 N.W.2d 680, 685 (Mich. Ct.

App. 1996).  Accordingly, Michigan courts recognize contractual subrogation, also

referred to as "conventional subrogation," to "arise by contract or by an express act

of the parties." *E. Sav. Bank v. Monroe Bank & Tr.*, No. 231886, 2002 WL

31941034, at *4 (Mich. Ct. App. Nov. 26, 2002).  In cases involving insurance

contracts, contractual "subrogation rights are derived from the policy of insurance

it issued to its insured." *Furness Golf Const., Inc. v. RVP Dev. Corp.*, No. 279398,

2009 WL 1653588, at *5 (Mich. Ct. App. June 11, 2009).  Finally, "[a] subrogee

acquires no greater rights than those possessed by his subrogor and the subrogated

insurer is merely substituted for his insured.  This is true whether subrogation is

equitable or conventional as in the instant case pursuant to a clause in the insurance

contract." *Titan Ins. v. N. Pointe Ins.*, 715 N.W.2d 324, 326 (Mich. Ct. App. 2006)

(citations omitted).

Section 3.18 of the Beazley Policy contains the following subrogation

clause:

### 3.18   Recoveries and Subrogation

Where the Underwriters have made a payment to the
Insured or on behalf of the Insured in respect of a claim
under this Policy, and the Insured, or any person acting on
behalf of the Insured, obtains the recovery or

23

reimbursement of any sum representing all or part of the liability, loss, cost or expense which was the subject of the claim so paid, such sum shall be applied on a pro-rata basis between the insured and the Underwriters in satisfaction of any sums paid by them in respect of liabilities, cost or expenses, including legal costs covered under this Policy.

The Underwriters *shall be subrogated to all rights which the Insured may have against any third party in respect of any payment made under the Policy to the extent of such payment, and the Insured shall, at the request of the Underwriters, execute forthwith any document required by the Underwriters for the purpose of the exercising of such rights*.

(ECF No. 22-3 at Pg ID 1363-64 (emphasis added).) Here, the italicized language is the relevant language. This language is clear and provides that RPM's rights regarding contribution of defense and settlement payments from Wesco have been legally assigned to Beazley. As such, the Court finds that Beazley is contractually subrogated to RPM's right to recover from Wesco.

### D. Equitable Right of Contribution & Pro Rata Share

In the alternative, Beazley maintains that it is entitled to recover at least a pro rata share of costs made by Beazley for RPM's defense and indemnification under its claims for equitable contribution. In support of this argument, Beasley asserts that the CGL Policy's "Other Insurance" provision is a pro rata clause and the Beazley Policy's "Other Insurance" provision is considered an "escape" or "no liability" clause, making the CGL Policy the primary insurance.

24

"An other insurance clause is a provision inserted in insurance contracts 'to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss.'" *Am. Auto. Ins. Co. v. Transp. Ins. Co.*, 288 F. App'x 219, 224-25 (6th Cir. 2008) (quoting *St. Paul Fire & Marine Ins. Co. v. Am. Home Assurance Co.*, 514 N.W.2d 113, 115 (Mich. 1994)).  The Michigan Supreme Court determined that there are three types of "other insurance" provisions: (1) A "pro rata" clause, which limits the liability of the insurer to " a proportionate percentage of all insurance covering the insured event;" (2) an "escape" or "no liability" clause, which provides that there is "no liability if the risk is covered by other insurance," and (3) an "excess" clause, which limits the insurers liability "to the amount of loss in excess of the coverage provided by other insurance." *Fed. Kemper Ins. Co. Inc v Health Ins. Admin. Co, Inc*, 383 N.W.2d 590, 592 (Mich. 1986).

Under the Beazley Policy, there is an "other insurance" provision entitled "Double Insurance."  Section 2.15 of the Beazley Policy provides the following:

### 2.15  Double Insurance

This Policy does not cover any claim which would be covered by any other insurance purchased by the insured and covering the same risks

25

(ECF No. 15 at Pg ID 157.)  The CGL Policy also contains an "Other Insurance"

provision, which contains a "Method of Sharing" section. This section provides the

following:

> **c. Method of Sharing**
>
> If all of the other insurance permits contribution by equal
> shares, we will follow this method also. Under this
> approach each insurer contributes equal amounts until it
> has paid its applicable limit of insurance or none of the
> loss remains, whichever comes first.
>
> *If any of the other insurance does not permit contribution
> by equal shares, we will contribute by limits*. Under this
> method, each insurer's share is based on the ratio of its
> applicable limit of insurance to the total applicable limits
> of insurance of all insurers.

(ECF No. 21-9 at Pg ID 760 (emphasis added).)

Because this "Method of Sharing" provision seeks to limit Wesco's liability

to a percentage where "each insurer's share is based on the ratio of its applicable

limit of insurance to the total applicable limits of insurance of all insurers," the

Court agrees that this is considered a pro rata clause under Michigan law.  *See*

*Mass. Bay Ins. Co. v. Cincinnati Ins. Co*., 324 F. Supp. 3d 926, 936–37 (E.D.

Mich. 2018) (determining that an insurance policy containing a "method of sharing

provision is akin to a pro-rata clause, which purports to limit the insurer's liability

to a proportionate percentage of all insurance covering the event.") (internal

quotations omitted).  Conversely, Beazley's "Double Insurance" provision states

26

that it "does not cover any claim which would be covered by any other insurance purchased by the insured and covering the same risks," effectively making it an "escape" clause as it seeks to remove all liability in the face of another insurance policy.

Michigan jurisprudence continues to develop regarding how courts should reconcile competing "other insurance" clauses when they essentially cover the same risks. *See Travelers Prop. Cas. Co. of Am. v. XL Ins. Am., Inc.*, No. 329277, 2017 WL 1033755, at *4 (Mich. Ct. App. Mar. 16, 2017) (citing *Pioneer State Mut. Ins. Co. v. TIG Ins. Co.*, 581 N.W.2d 802 (Mich. Ct. App. 1998)) (noting that "[a] variety of combinations of the clauses may occur (e.g., pro rata versus excess, pro rata versus escape, excess versus excess) and the courts have developed different rules for resolving these conflicts."). When faced with determining primary and secondary liability in the face of a pro rata clause and an escape clause, the Michigan Court of Appeals originally adopted the minority view: to declare both clauses "repugnant," disregard them both, and find that "[e]ach insurer's liability is then prorated based on the proportion of the combined policy limits represented by the limits of each insurer's policy." *Farm Bureau Mutual Ins. Co. v. Horace Mann Ins. Co.*, 345 N.W.2d 655 (Mich. Ct. App. 1983). However, the Michigan Supreme Court subsequently determined that it would "express no opinion regarding the correctness of the *Farm Bureau* decision," *St. Paul Fire &*

27

*Marine Ins. Co.*, 514 N.W.2d at 118 n.24, but instead would adopt the majority view[3] for Michigan courts, *id.* at 121 (concluding that "the majority rule is the better choice and adopt it as the law of Michigan").  A few years later, the Michigan Court of Appeals interpreted the *St. Paul* decision, noting that "with the exception of [*Farm Bureau*], this Court has limited the application of the minority rule to instances where there are *identical* conflicting 'other insurance' provisions." *Pioneer State Mut. Ins. Co.*, 581 N.W.2d at 806 n.3 (emphasis in original).  Thus, when a situation like *Farm Bureau* arises—a conflict between a 'pro rata' clause and an 'escape' clause—Michigan law permits that the minority rule still applies to determine liability.

Here, the Court is presented with two policies: (1) the CGL Policy containing a pro rata clause, which intends to reduce Wesco's liability to a percentage; and (2) the Beazley policy containing an escape clause, which seeks to limit liability completely if RPM has another insurer, which it does. Similar to *Farm Bureau*, when reading the CGL Policy first, it would provide that parties are required to share the liability.  However, if reading the Beazley Policy first, it completely absolves Beazley from all liability.  As such, both clauses must be

---

[3] The majority view reconciles competing "pro rata" and "excess" clauses "by interpreting the policy containing the excess clause as secondary coverage where there is another insurance policy covering the same risk."  *St. Paul Fire & Marine Ins. Co.*, 514 N.W.2d at 119.

rejected, and both Wesco and Beazley's liability is "then prorated based on the proportion of the combined policy limits represented by the limits of each insurer's policy." *Farm Bureau Mut. Ins. Co.*, 345 N.W.2d at 657. Further, the share in the costs for defense and indemnification represents an equitable solution in that it combines the intent to Wesco's pro rata clause and grants Beazley's request to share in the costs with Wesco. *See St. Paul Fire & Marine Ins. Co*, 514 N.W.2d at 117 (emphasizing the importance to "refrain from rewriting the contracts and instead give effect to the meaning and intent of the policy language.")

For these reasons, the Court is granting Beazley's motion for summary judgment in part regarding Wesco's affirmative duty to defend and Beazley's contractual subrogation rights, and denying in part summary judgment regarding the claim for equitable subrogation.

### III.   RPM's Motion for Summary Judgment

In its summary judgment motion, RPM seeks a finding of the following as to whether Wesco:

(1) breached its duty to indemnify RPM when it denied coverage to RPM for the Underlying Action;

(2) is obligated to reimburse RPM for the $31,369.67 RPM contributed to settlement of the Underlying Action;

(3) is obligated to RPM for prejudgment interest, along with penalty interest pursuant to MCL 500.2006; and

> (4) is obligated to RPM for such further and additional
> relief as may be determined and ordered by the Court.

(ECF No. 23 at Pg ID 1446.)  RPM, however, relies on the arguments in Beazley's

motion, to which it concurs and joins.  (*Id.*)

## A. Wesco's Breach of Duty to Defend and Indemnify / Financial Obligations

As the Court discussed in its analysis of Beazley's motion for summary

judgment, the Court finds that Wesco owed a duty to defend RPM in the

Underlying Action, and by failing to accept tender, breached the duty under both

the CGL Policy and the Umbrella Policy.  *See supra* Section II(A).  Under

Michigan law, "[i]t is a third-party suit that triggers the insurer's duty to defend the

insured and, ultimately, to indemnify the insured for sums the insured is legally

obligated to pay."  *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 861

(Mich. Ct. App. 2008).  Because Wesco had a duty to defend RPM, it also has a

duty to indemnify RPM for any costs that it was obligated to pay in the Underlying

Action.  Specifically, RPM maintains that Wesco has an obligation to reimburse

RPM for the amount it contributed, alongside Beazley's contribution, to the

settlement in the Underlying Action.  As the Court noted in its analysis of

Beazley's motion, both Wesco and Beazley will share in the liability for the

defense and indemnification of the Underlying Action, *see discussion supra*
Section II(D), which includes the $31,369.67 that RPM requests.[4]

## CONCLUSION

For the reasons stated, Wesco's arguments that it did not owe a duty to
defend or indemnify RPM in the Underlying Action fail as a matter of law because
the CGL Policy, and by incorporation, the Umbrella Policy, covered third party
death in connection with RPM's business.  Wesco's argument that the Beazley
Policy is the primary insurance also fails as a matter of law because both policies
cover the same loss, risk, and subject matter, and the Beazley Policy is not more
specifically tailored to the circumstances of the claim.  Moreover, as a matter of
law, Wesco owed a duty to defend and indemnify RPM in the Underlying Action
and the undisputed facts establish that Wesco subsequently breached those duties.

Next, Beazley's claim that it has an equitable right of subrogation fails as a
matter of law because there is insufficient evidence in the record for a
determination as to which insurer is considered the primary insurer, which is
required for equitable subrogation.  With respect to Beazley's claim regarding
contractual subrogation, the Beazley Policy contains a clear provision that provides
subrogation for any recovery that RPM may receive.  Further, Beazley is subject to

---

[4] RPM also requests pre-judgment and post-judgment interest pursuant to Mich.
Comp. Laws § 500.2006.  Wesco does not dispute this request. (*See* ECF No. 24.)
As such, the Court grants pre- and post-judgment interest payments to RPM.

equitable contribution and a pro rata share for its defense and indemnification in the Underlying Action because under Michigan law, both "other insurance" clauses cancel each other out, resulting in both parties sharing in the costs of policy payments.

Finally, Wesco owed a duty under both the CGL and Umbrella Policies and the undisputed facts establish that Wesco breached the duty, entitling RPM to recovery of the $31,369.67 in fees related to the settlement of the Underlying Action and any prejudgment and post-judgment interest under Michigan Compiled Laws § 500.2006.

Accordingly,

**IT IS ORDERED** that Wesco's motion for summary judgment (ECF No. 21) is **DENIED**, Beazley's motion for summary judgment (ECF No. 22) is **GRANTED IN PART** and **DENIED IN PART**, and RPM's motion for summary judgment (ECF No. 23) is **GRANTED**.

**SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 15, 2023